# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF LLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| Julie Hagan and Brandon Hagan, as parents and next best friends of J.H., a minor, et al., | ) ) ) | |
| | ) | Case No.: 1:25-cv-05807 |
| Plaintiffs, | ) | Consolidated with Case Nos.: |
| v. | ) | |
| | ) | 1:25-cv-05815 (Webb/Johnson) |
| City of Chicago Board of Education | ) | 1:25-cv-05829 (Kidd) |
| a/k/a Chicago Public School District 299), | ) | 1:25-cv-05823 (Bowen) |
| Jane Doe Educator No. 1 and Jane Doe | ) | 1:25-cv-05827 (Iverson) |
| | ) | 1:25-cv-05832 (Hendrix/Turner |
| Defendants. | ) | Payne) |
| | ) | 1:25-cv-05833 (Ramirez) |
| | ) | 1:25-cv-05834 (Terry) |
| | ) | 1:25-cv-05835 (Bright) |
| | ) | 1:25-cv-05836 (Thomas) |
| | ) | 1:25-cv-05837 (Howell) |
| | ) | 1:25-cv-05838 (Haywood) |
| | ) | 1:25-v-05839 (Cox) |
| | ) | 1:25-cv-05841 (King) |
| | ) | |
| | ) | Honorable Edmond E. Chang |

## CONSOLIDATED AMENDED COMPLAINT

Plaintiffs Brandon Hagan and Julie Hagan ("Hagan"), as parents and next best friends of J. H., a minor; Sharon Webb and Vincent Johnson ("Webb and Johnson"), as parents and next best friends of M.J., a minor; Tennisha Cox ("Cox"), as mother and next best friend of A.G., a minor; Jason Thomas ("Thomas), as father and next best friend of K.T., a minor; Pearl King ("King"), as mother and next best friend od M.K., a minor; Mary Terry ("Terry"), as parent and next best friend of Z.G., a minor; Brenda Haywood

1

("Haywood"), as mother and next best friend of M.M., a minor; Pamela Kidd ("Kidd"), as mother and next best friend of C.H., a minor; Donnette Bright ("Bright"), as mother and next best friend of D.B., a minor; Parish Bowen and Candace Bowen ("Bowen"), as parents and next best friends of J.B., a minor; Ashley Howell ("Howell"), as mother and next best friend of C.W., a minor; James Hendrix and Ashaunti Turner-Payne ("Hendrix and Turner-Payne"), as parents and next best friends of J.H., III, a minor; Cynthia Ramirez ("Ramirez"), as mother and next best friend of K.T., a minor; and James Iverson ("Iverson"), a father and next best friend of M.I., a minor (Plaintiffs), and for their complaint against Defendants Chicago Board of Education (a/k/a Chicago Public Schools, District 299), Jane Doe Educator No. 1, and Jane Doe Educator No. 2, state as follows:

## Introduction

1.     Plaintiffs James Hendrix and Ashaunti Turner-Payne's minor child was assigned by CPS to a special education classroom for grades K through 2 at John Whistler Elementary in and around the school year starting in 2017.

2.     Plaintiff James Iverson's minor child was assigned by CPS to a special education classroom for grades K through 2 at John Whistler Elementary in and around the school year starting in 2019.

3.     The following Plaintiffs: Sharon Webb and Vincent Johnson; Tennisha Cox; Mary Terry; and Ashley Howell's minor children were assigned by CPS to a special education classroom for grades K through 2 at John Whistler Elementary in and around

the school year starting in 2021.

4.      The following Plaintiffs: Brandon Hagan and Julie Hagan; Jason Thomas; Pearl King; Belinda Haywood; Pamela Kidd; Donnette Bright; Parish Bowen and Candace Bowen; and Cynthia Ramirez's minor children were assigned by CPS to a special education classroom for grades K through 2 at John Whistler Elementary in and around the school year starting in 2022.

5.      The children in the K-2 classroom at Whistler Elementary were subjected to disability-based harassment and abuse that non-special education students at the school were not exposed to.

6.      The children in the K-2 special education classroom at John Whistler Elementary were subject to verbal and physical abuse and intimidation by Jane Doe Educator No. 1.

7.      Jane Doe Educator No. 1's conduct created a hostile environment in the classroom and denied the special education students therein of the equal education opportunities required by federal law.

8.      Jane Doe Educator No. 2 knew about the hostile environment created by Jane Doe Educator No 1 and allowed the children in that classroom to remain in that environment.

**Jurisdiction and Venue**

9.      There is jurisdiction over this proceeding pursuant to 735 ILCS 5/2-209 because the events giving rise to this action occurred within the State of Illinois.

10.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 because the events giving rise to this action took place in the City of Chicago.

**Parties**

11.     The Plaintiffs are the natural parents and or duly appointed guardian(s) of their minor children who were special education students in grades kindergarten through second grade, and, at all relevant times, attended John Whistler Elementary School wherein Educator No. 1 was their teacher and Educator No. 2 was the principal.

12.     John Whistler Elementary School is a Chicago Public School for grades K-8 that is located at 11533 South Ada Street in the City of Chicago.

13.     Defendant Chicago Board of Education (a/k/a Chicago Public Schools, a/k/a District 299) is a municipal corporation organized under the laws of the State of Illinois. The Board is responsible for the governance and organizational oversight of CPS, and establishes the policies and standards for the education of children with disabilities and ensures that all federal and state laws regarding children with disabilities are followed at CPS Schools and by CPS personnel.

14.     The Board is responsible for the actions and conduct of CPS employees and agents, and had the right to control the time, manner, method, and performance of Jane Doe Educator No. 1's and Jane Doe Educator No. 2's official duties.

15.     Jane Doe Educator No. 1 was and at all times relevant employed and or contracted by CPS and was a special education teacher assigned to work at Whistler Elementary

16.     Jane Doe Educator No. 1 was and at all times relevant was acting within the scope of her agency, service, and or employment as a special education teacher for CPS.

17.     Defendant Jane Doe Educator No. 2 at all times relevant employed by CPS and was or is a principal and administrator assigned to work at Whistler Elementary, and responsible for the oversight of all the teachers assigned to that CPS school, and ensuring the safety and welfare of all students in the school.

18.     Defendant Jane Doe Educator No. 2 at all times relevant was acting within the scope of her agency, service, and or employment as a school principal and or as an official and or administrator for CPS.

19.     Jane Doe Educator No. 1 and Jane Doe Educator No. 2 and those other employees and agents of CPS both act and acted under color of state law.

## Facts

20.     Plaintiffs' minor children attended John Whistler Elementary, and were special education students in the "cluster" classroom (combining kindergarten through second grade) for special education students.

21.     Plaintiffs' minor children are "handicapped persons" as that term is defined by section 504 of the Rehabilitation Act of 1973, "qualified individual[s] with disability" as that term is defined in Title II of the ADA, "child[ren] with a disability" as that term is defined in the Individuals with Disabilities Education Act, and had Individualized Education Plans.[1]

22.     Plaintiffs' minor children received "Public Services" as that term is used in the ADA from a CPS, which is a "Public Entity" under the ADA.

23.     In enacting the Americans with Disabilities Act, Congress made express findings, including that:

- "discrimination against individuals with disabilities persists in such critical areas as … education … and access to public services"

- "census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally."

---

[1] Exhaustion of administrative remedies is not required, and  Plaintiffs are exempt from the IDEA administrative process.   Plaintiffs do not allege a procedural violation of the IDEA and relief from the injuries alleged is not available in the IDEA's administrative process.

6

- "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals."

24. Section 504 of the Rehabilitation Act of 1973 prohibits discrimination, harassment, intimidation, and bullying against students with disabilities in programs and activities that receive financial assistance from the U.S. Department of Education, including the "cluster" program at Whistler Elementary.

25. Federal law, including the ADA, IEDA, Rehabilitation Act prohibit harassment of students with disabilities and the creation of a hostile environment, which occurs when a student is subjected to unwelcome conduct, which is both subjectively offensive and would be offensive to a reasonable person of the protected characteristics under similar circumstances.

26. A hostile environment exists when the conduct is sufficiently severe, persistent, or pervasive to interfere with, or limit an individual's ability to effectively to participate in, or benefit from the school's services, programs, activities, or opportunities offered.

27. Hostility and harassment can take many forms, and includes verbal remarks and name-calling, any conduct that may be threatening or humiliating, and any kind of intimidation.

28. The federal statues required CPS to provide an education designed to meet students with disabilities needs, to maintain a safe learning environment for students

with disabilities, and prohibited hostility or the creation of a hostile environment for students with disabilities that would deny them the benefits of the school's services, programs, activities, or opportunities.

29.     Plaintiffs' minor children have similar special education needs as described above, and were grouped into single "cluster" classroom at Whistler Elementary that included children grades kindergarten through second grade.

30.     Plaintiffs' minor children, including other special education students in the K-2 cluster room at Whistler Elementary, presented with various mental and or physical disabilities and learning disorders ranging from cerebral palsy, autism spectrum disorder (ASD), attention-deficit/hyperactivity disorder (ADHD) to sensory processing disorder (SPD).

31.     The special education students in the K-2 cluster room were sensitive to loud sounds, and required additional time to process information, including requests to perform tasks.  Some of the students in the K-2 cluster room have impaired verbal and nonverbal communication abilities, meaning they could not speak.

32.     At all times relevant, Educator No. 1 was the lead teacher in the K-2 cluster room at Whistler Elementary.

33.     Educator No. 1 described herself as "mean" on social media, which was known by CPS personnel, and was known by CPS personnel to be very loud towards students and have short temper.

8

34.     Educator No. 1 used fear, abusive language, threats, intimidation, and physical punishment to carry out her teaching responsibilities and duties at Whistler Elementary.

35.     Educator No. 1 would shout at and make demands of special education students that such students, with learning and cognitive disabilities, could not possibly accomplish.

36.     Educator No. 1 ruled the K-2 cluster classroom through fear and intimidation, and ruled the classroom in a way that was unfit for special education students.

37.     For example, Educator No. 1 would shout at, swear at, threaten students in the cluster room with physical violence when special education students did not respond in the way Educator No. 1 wanted.

38.     Educator No. 1 often struck students with wooden rulers or devices, when the special education children had difficulty completing assignments or tasks.

39.     In and around October and thereafter in 2017, Plaintiffs Hendrix/Turner Payne's minor child returned home from school with bruises and red marks to his body. In November and December of that year, the minor child returned home with bruises and a wound to his face.  On information and belief, the bruises and wounds to the body and face of Plaintiffs' minor child was a result of Educator No. 1 physically striking and using

other corporal punishment on the minor child on or about November 7, November 14 and in December 2017.

40.     In or around early 2022, Plaintiff Terry's minor child came home with bruise marks to her face which were not there when the minor child went to school that morning.  When questioned by Plaintiff Terry, Educator No. 1 claimed that the minor child had fallen when she was playing.

41.     On or about April 24, 2022, on information and belief, Educator No. 1, while conducting the class at Whistler Elementary, struck Plaintiff Cox's minor child about the face.

42.     On or about May 9, 2022, Educator No. 1, while conducting the class at Whistler Elementary, on information and belief, struck Plaintiff Cox's minor child about the face.  When questioned by Plaintiff Cox, Educator No. 1 claimed that the bruise was as a result of A.G. sleeping on his desk chair.

43.     On or about September 29, 2022, Educator No. 1, while conducting the class, on information and belief, struck Plaintiffs Webb and Johnson's minor child about the face.

44.      Plaintiff Ramirez's minor child was subject to Educator No. 1's use of corporal punishment.  The minor child told Plaintiff Ramirez that Educator No. 1 had been hitting her and other children.

45.    In and around the Fall of 2022, Plaintiff Bright's minor child came home from school with a bump on his head., on information and belief, which was as a result of Educator No. 1's use of corporal punishment.

46.    In or around the Fall of 2022, Plaintiff Thomas' minor child communicated tohis parent that Educator No. 1 was hitting him.

47.    In or around September 2022, Plaintiff King's minor child came home from school with multiple bruises on her right hand and cheek; and a swollen cheek that had an impact mark on it.

48.    In and around October, November and December 2022, Plaintiff Kidd's minor child communicated being hit and screamed at by Educator No. 1.  Additionally, in November 2022, the minor child came home with a welt on the back of his right shoulder, on information and belief, which was as a result of Educator No. 1's use of corporal punishment.

49.    In or around December 2022, Plaintiff Haywood's minor child arrived at her after school program limping and rubbing her left thigh, indicating she was in pain, on information and belief, having sustained such injuries while in the classroom taught by Educator No. 1.

50.    On or about January 17, 2023, on information and belief, Plaintiff Cox's minor child was subjected to Educator No. 1's continued use of corporal punishment when Educator No. 1 hit the minor child in the face.

11

51.     On or about January 31, 2023, Educator No. 1, while conducting the class, yelled, screamed, and threatened harm to Plaintiffs Hagan's minor child in response to him coloring with a yellow crayon as opposed to a red crayon, and repeatedly struck him with a wooden ruler as a means of gaining compliance.

52.     On or about February 1, 2023, Educator No. 1 again used corporal punishment, and struck Plaintiffs Hagan's minor child several times with a wooden ruler.

53.     On or about February 13, 2023, Educator No. 1, while teaching special education students, verbally berated Plaintiffs Hagan's minor child for crying in the classroom, and used corporal punishment by hitting him with a yardstick.

54.     Educator No. 1's abusive behavior included telling the children in her classroom, including Plaintiffs Hagan's minor child, "the longer you cry, the longer I will hit you."

55.     Educator No. 1 loudly used offensive language in the classroom by regularly cursing at Plaintiffs' minor children, including Plaintiffs Hagan's minor child, yelling words such as "get your ass up here" and "shut the f–k up."

56.     Educator No. 1 used "'time out'" methods with the special education children in her classroom which included isolating the children at times in a corner facing a wall in the classroom for extended periods of time, or by depriving the children of certain necessities such as lunch and or recess breaks.

57.     CPS had a policy that time out should be "only for a brief time" because "there is an increasing concern that restraint and time outs are being used more broadly and that students with disabilities are being disproportionately subjected to their use." Despite this, Defendants CPS and Educator No. 2 allowed Educator No. 1 to employ length and repeated time outs against special education students.

58.     On or about January 26, 2023, after directing vile and abusive language at Plaintiffs Hagan's minor child, Educator No.1 punished the minor child with a forbidden time out method which involved ordering him to stay in the classroom as the other students went to lunch, depriving him of scheduled lunch time.

59.     Described above are examples of Educator No. 1's teaching practices, habits and her way of governing special education students in her classroom, including but not limited to the Plaintiffs' minor children.

60.     The special education students in Educator No. 1's classroom, having deficits and special needs, were treated in the abusive and hostile manner described above because that is how Educator No. 1 conducted her classroom.

61.     Each of the acts described above by Educator No. 1 were prohibited by federal law, and inconsistent with current special education teaching methods and standards.

62.     Educator No. 1's conduct and methods of teaching the special education children in the K-2 cluster room created an environment of fear and intimidation, and

denied the minor children therein the benefit of the school's special services, programs, activities, or opportunities.

63.     The hostile environment created by Educator No. 1's conduct described above was continuous and on an ongoing up to and through February 2023, and known by Educator No. 2 and CPS.

64.     Educator No. 2's office was near Educator No. 1's classroom, and the classroom had a large window where Educator No. 2 could view the activity in the classroom.

65.     Educator No. 2 passed by Educator No. 1's classroom multiple times per day, and could hear and sew the activity and Educator No. 1 inside the classroom.

66.     In addition, Educator No. 2 entered Educator No. 1's classroom weekly and was aware of the environment created by Educator No. 1's conduct.

67.     Educator No. 2 routinely told all the employees at Whistler Elementary that she "knew everything that occurred in the school," and given her proximity to Educator No. 1's classroom, she knew or must have known about the conduct occurring therein.

68.     Educator No. 2, by allowing the events in Educator No. 1's classroom to continue, sanctioned and supported Educator No. 1's teaching methods and the denial of the school's special education services, programs, activities, or opportunities to the minor children in the K-2 cluster classroom.

69.     When parents of students in the K-2 cluster room at Whistler Elementary reported concerns about Educator No. 1 and about marks on their children's faces and body, Educator No. 2 declined to address them.

70.     When Educator No. 2 convened a meeting with the parents, she and Educator No. 1 made excuses for injuries to students in the K-2 cluster room.

71.     In one meeting, Educator No. 1 even demanded that a non-verbal child respond to questions when the student could not do so, while Educator No. 2 condoned such action.

72.     Educator No. 2's actions, including in the meeting, was designed and intended to hide and mask Educator No. 1's conduct.

73.     The hostile environment created by Educator No. 1's conduct impacted the children in the K-2 cluster room at home and outside of school, including changes in behavior and temperaments.

74.     For example, Plaintiffs Hagan's minor child would flinch sometimes as if afraid of being hit, he would cry and refuse to go inside the school building and would frequently say to mom and dad, "no go to school."

75.     Plaintiffs Hendrix and Turner-Payne's minor child would flinch sometimes when exposed to loud noises and conveyed a fear of attending school.

76.     Plaintiff Mary Terry's minor child would not look at or greet Educator No. 1 when she arrived at school. The minor child would cover her ears and look away from

Educator No. 1; the minor child began to curse and say words like, "sit your A-word down" and "I'm going to whip you're A-Word"; and from 2022 to 2023, there was a shift in the minor child's behavior whereby she displayed a strong aversion to school, crying an trying to pull away when being taken to the bus on the morning.

77.     Plaintiff Kidd's minor child began hitting himself on the hand when he was upset and using curse words.  In November 2022, the minor child no longer wanted to go to Whistler Elementary and would delay getting out of bed, getting dressed, generally moving slowly through his morning In January 2023, despite being toilet trained, the minor child defecated om himself while at school.

78.     Plaintiff Cox's child would sometimes flinch in fear when someone approached and or tried to give him a hug.  In addition, although toilet trained, the minor child began to frequently urinate in bed and on himself.

79.     Plaintiffs' Webb and Johnson's minor child would flinch sometimes when exposed to loud noises and exhibited a fear of attending class at Whistler Elementary.

80.     Plaintiff Bright's minor child exhibited behavior changed which included becoming quiet, putting his head down, lowering his eyes, and laughing nervously.

81.     Plaintiff Thomas' minor child exhibited behavior changes which included times where he became extremely quiet, would put his head down, and lowering his eyes, as if in fear, and laughing nervously.

82.     Plaintiff King's minor child began exhibiting low energy and was frequently tired, a change from her usual happy demeanor; the minor child showed a strong aversion to going to school, crying and throwing tantrums whenever she had to go.  In addition, after accidently spilling a beverage, the minor child showed a fear of being harmed when she made a mistake, saying "Please don't hurt me" when the Plaintiff moved to clean the spill.

83.     Plaintiff Haywood's minor child experienced mood shifts and crying excessively while at school.

84.     Over time, Plaintiff Ramirez's minor child began exhibiting excessive nervousness and being overly quiet.  The minor child also stated that Educator No. 1 was hitting her with a ruler.

85.     After being assigned to Educator No. 1's classroom, Plaintiff Iverson's minor child would throw tantrums, became confrontational, began using curse words, would come home from school in a terrible mood, and many times would be screaming and upset.  The minor child's personality changed from a very calm, quiet, demure, and non-confrontational child to often being angry.

86.     Plaintiffs Bowen's minor child had the following behavioral changes:

a.  The minor child stopped eating her lunch, frequently returning home with a full lunch box despite Plaintiffs ensuring it was filled with her favorite foods; the minor child showed an aversion to going to school and would become visibly upset when she had to go, ultimately leading to tantrums, scratching her head, and would cry.

    b.   The minor child grabbed and clung to the leg of her parent, and cried when it was time to go to school.

    c.   The minor child urinated on herself three different times while at school despite knowing how to go to the bathroom when necessary.

    d.   The minor child's behavior regressed to the point where the child would throw tantrums, and experienced a decrease in her ability to use words to communicate. During her tantrums, the minor child would bang her head on the floor, pull out her own hair, throw herself around on the floor, and hit herself on her head and legs.

87.    The special education children, having been repeatedly exposed to Educator No. 1 abusive language in the classroom, would repeat some of the words used Educator No. 1 at home.

88.    The abuse and hostile environment created by Educator No. 1 and condoned by Educator No. 2 caused emotional, social, and other injuries to Plaintiffs' minor children and resulted in the children being denied the education mandated by federal law.

## COUNT I

### Discrimination – Hostile Environment – Section 504

### Defendant CPS

89.    Each of the foregoing paragraphs are incorporated herein.

90.    Section 504 prohibits discrimination on the basis of disability by schools receiving federal funds.

91.     All persons covered by Section 504 are protected from discrimination under the general nondiscrimination regulatory provisions implementing these statutes including protection against retaliation and harassment.

92.     Defendant CPS receives federal funds and is subject to section 504, and the rules and regulations promulgated thereunder.

93.      Plaintiffs' minor children are individuals with a disability as that term is used in section 504.

94.      Plaintiffs' minor children were subject to harassment and a hostile environment based upon the children's learning deficiencies and disabilities.

95.     The harassment and hostile environment created in the K-2 cluster classroom was so severe and pervasive that it denied the Plaintiffs' minor children the ability to participate in or benefit from educational services, programs, and activities by, among other things, denying them the right to be free from harassment, hostility, and assault in the educational environment.

96.     The acts and omissions by the Defendants constitute bad faith, gross negligence, and/or intentional discrimination against the Plaintiffs' minor children which resulted in the denial of equal access to the educational services, programs, and activities that the minor children were entitled to by law.

97.     Educator No. 1, an employee of Defendants CPS, knew about and created the hostile environment.

98.     Educator No. 2 and CPS knew or were deliberately indifferent to the actions of Educator No. 1 in connection with the conduct of Educator No. 1 in the K-2 cluster classroom.

99.     Defendants CPS and Educator No. 2, collectively or in combination thereof, acted with deliberate indifference to the rights to which the Plaintiffs' minor children were entitled.

100.     Defendants CPS and Educator No. 2 were aware of Educator No. 1's failures and knew or should have known that such failures interfered with the Plaintiffs' minor children's access to an education equal to that of non-disabled peers.

101.     Defendants CPS and Educator No. 2, collectively or in combination thereof, violated the ADA due to their indifferences to the ongoing failure to implement the rightful safeguards and measures to which the Plaintiffs' minor children were entitled.

102.     The acts, omissions, and overall conduct of Defendants CPS and Educator No. 2 proximately caused the incident described herein and the injuries and damages sustained by the Plaintiffs' minor children.

103.     As a result of the acts and omissions proximately caused by the Defendants, the Plaintiffs' minor children suffered injuries and damages, including emotional damage and delayed learning development.

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendants for an amount determined by the jury at trial, and for an award of attorneys'

fees and costs, and for such other and further relief as may be warranted under the circumstances.

## COUNT II

### Discrimination – Hostile Environment – Title II of the ADA

### Defendant CPS

104.    Each of the foregoing paragraphs are incorporated herein.

105.    Title II of the ADA prohibits discrimination on the basis of disability in all state and local entities regardless of whether they receive federal funds.

106.    All persons covered by Title II are protected from discrimination under the general nondiscrimination regulatory provisions implementing these statutes including protection against retaliation and harassment.

107.    Defendant CPS receives federal funds and is subject to the ADA, and the rules and regulations promulgated thereunder.

108.     Plaintiffs' minor children are individuals with a disability as that term is used in the ADA.

109.     Plaintiffs' minor children were subject to harassment and a hostile environment based upon the children's learning deficiencies and disabilities.

110.    The harassment and hostile environment created in the k2- cluster classroom was so severe and pervasive that it denied Plaintiffs' minor children the ability to participate in or benefit from educational services, programs, and activities by, among

other things, denying them the right to be free from harassment, hostility, and assault in the educational environment.

111.    The acts and omissions by the Defendants constitute bad faith, gross negligence, and/or intentional discrimination against Plaintiffs' minor children which resulted in the denial of equal access to the educational services, programs, and activities that the children were entitled to by law.

112.    Educator No. 1, an employee of Defendants CPS, knew about and created the hostile environment.

113.    Educator No. 2 and CPS knew or were deliberately indifferent to the actions of Educator No. 1 in connection with the conduct of Educator No. 1 in the K-2 cluster classroom.

114.    Defendants CPS and Educator No. 2, collectively or in combination thereof, acted with deliberate indifference to the rights to which Plaintiffs' minor children were entitled.

115.    Defendants CPS and Educator No. 2 were aware of Educator No. 1's failures and knew or should have known that such failures interfered with the Plaintiffs' minor children's access to an education equal to that of non-disabled peers.

116.    Defendants CPS and Educator No. 2, collectively or in combination thereof, violated the ADA due to their indifferences to the ongoing failure to implement the rightful safeguards and measures to which Plaintiffs' minor children were entitled.

22

117.    The acts, omissions, and overall conduct of Defendants CPS and Educator No. 2 proximately caused the incident described herein and the injuries and damages sustained by Plaintiffs' minor children.

118.    As a result of the acts and omissions proximately caused by the Defendants, the Plaimtiffs' minor children suffered injuries and damages, including emotional damage and delayed learning development.

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendants for an amount determined by the jury at trial, and for an award of attorneys' fees and costs, and for such other and further relief as may be warranted under the circumstances.

## COUNT III

### Equal Protection – 42 U.S.C. § 1983

### Defendant CPS

119.    Each of the foregoing paragraphs are incorporated herein.

120.    Defendant CPS is a unit of local government that acts under color of State law.

121.    Under the Fourteenth Amendment to the United States Constitution, the Plaintiffs' minor children are entitled to equal treatment under the law.

122.    The Plaintiffs' minor children were members of an identifiable class of children with disabilities, as that term is used is used in federal statutes and regulations.

123.     The Plaintiffs' minor children were subject to disparate treatment from other school children based on their disability.

124.     Defendant Educator No. 1 victimized the Plaintiffs' minor children based on their membership in a class of disabled individuals.

125.     Defendants treated the Plaintiffs' minor children differently than other similarly situated individuals not belonging to the class of disabled minor children.

126.     The differential treatment of the Plaintiffs' minor children was intentional and arbitrary, motivated by nefarious and discriminatory purposes, and was not rationally related to any governmental interest.

127.     The acts of Defendants were objectively unreasonable, and undertaken with malice, willfulness, and reckless indifference to the rights of others, including the Plaintiffs' minor children.

128.     Defendant violated the Plaintiffs' minor children's constitutional right to equal protection by:

   a.  Failing to establish, implement, or enforce policies and/or procedures within Whistler Elementary, including those required by The Federal Education for All Handicapped Children Act, 20 U.S.C. § 1400, et seq., that assures all handicapped children the right to a public education free of physical or verbal abuse and unlawful restraint;

   b.  Failing to adequately and appropriately respond to conduct occurring in the classroom of Educator No. 1 as described herein;

c. Failing to adequately train and/or supervise Educator No. 1 and report instances of disparate treatment so as to allow constitutional and civil rights violations;

d. Failing to intervene, overlooking, ignoring, and/or disregarding abuse against nonverbal and disabled students in the K-2 cluster classroom; and

e. Allowing Educator No. 2 to cultivate a culture and atmosphere of intimidation so that aides feared stopping, assisting with, or reporting constitutional and civil rights violations of students.

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendants for an amount determined by the jury at trial, for an award of attorneys' fees and costs, and for such other and further relief as may be warranted under the circumstances.

## COUNT IV

### *Respondeat Superior* – **Defendant CPS**

129. Each of the foregoing paragraphs are incorporated herein.

130. Under Illinois *respondeat superior* law, an employer may be liable for the negligent, willful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer.

131. Educator No. 1 was acting within the scope of her employment in her actions described herein that created a hostile environment in the classroom. Overseeing the students and teaching in the classroom were the kind of acts she was employed to

perform; her conduct occurred during school and work hours and within the confines of Whitler Elementary; and her actions were motivated, at least in part, by a purpose to serve CPS in her role as teacher of the cluster classroom and the objective of maintaining discipline in the classroom.

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendants for an amount determined by the jury at trial, and for costs and such other and further relief as may be warranted under the circumstances.

## COUNT V

### Willful and Wanton Supervision – Defendant CPS and Educator No. 2

132.     Each of the foregoing paragraphs are incorporated herein.

133.     At all times relevant to the allegations in this complaint, Educator No. 2 was duly appointed representative of CPS at Whistler Elementary and the supervisor of the teachers at Whistler Elementary.

134.     As the supervisor for all teachers at Whistler Elementary, Educator No. 2 was required to keep apprised of the teaching means and methods used by the teachers; confirm that teachers followed CPS policy; and investigate and report teachers acting inappropriately towards students.

135.     Despite the danger known of failing to supervise teachers, CPS and Educator No. 2 failed to exercise ordinary care to prevent the danger presented by Educator No. 1's teaching approach or failed to discover the danger to the students in the

K-2 cluster room presented by Educator No. 1 through recklessness, or carelessness when it could have been discovered by ordinary care.

136.    As described herein, Educator No. 2 willfully and wantonly supervised the conduct of Educator No. 1, by among other things, deliberately concealing the hostile environment created by Educator No. 1's conduct in the special education classroom.

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendants for an amount determined by the jury at trial, and for costs and such other and further relief as may be warranted under the circumstances.

COUNT VI

**Willful and Wanton Conduct – All Defendants**

137.    Each of the foregoing paragraphs are incorporated herein.

138.    At all times relevant, it was the duty of CPS, Educator No.1, and Educator No. 2 to ensure that the minor child and other special education students had a safe and nurturing environment within to learn, to be free of physical violence and mistreatment, to be free from the use of corporal punishment, and for Defendants to refrain from engaging in reckless conduct, intentional conduct, willful and wanton conduct or conduct which exhibited an utter indifference and or conscious disregard for the safety of Plaimtiffs' Minor child and other special education children.

139.    During the time and at the place alleged, Defendant Educator No. 1, Defendant Educator No. 2, and Defendant CPS, by and through their agents and

employees, breached their duty to Plaintiffs' minor child by acting in an intentional, reckless, willful and wanton manner, and or in utter disregard for the children's safety in one or more of the following respects:

   a. Permitted and used prohibited corporal punishment against the Minor Child in violation of school policy;

   b. Permitted and used physical violence against the Minor Child;

   c. Permitted and used prohibited time-out methods against the Minor Child in violation of school policy;

   d. Permitted and used hostile and threatening tactics against a mentally and physically compromised Minor Child;

   e. Permitted and used degrading, offensive, and bullying language against the mentally and physically compromised Minor Child;

   f. Created a hostile and abusive school learning environment for the Minor Child;

   g. Failed to intervene to prevent the ongoing abuse and physical violence of minor children;

   h. Failed to enforce special education policies against Educator No. 1; and

   i. Was otherwise willful and wantonly negligent.

140.    As a proximate result of one or more of the aforesaid intentional and/or willful and wanton acts and/or omissions by the Defendants, Plaintiffs' minor child sustained serious, continuing, and ongoing physical, mental, and emotional harm.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendants for an amount determined by the jury at trial, and for costs and such other and further relief as may be warranted under the circumstances.

## COUNT VII

### Intentional infliction of Emotional Distress Claim – All Defendants

141.    Each of the foregoing paragraphs are incorporated herein.

142.    Over a continuing period of time including into February 2023, Defendants engaged in ongoing conduct of an outrageous, extreme nature which included the use of prohibited corporal punishment, use of abusive, degrading and threatening practices and vile language with special education children, including Plaintiffs' minor children who presented with special needs and physical, mental and emotional deficits.

143.    At all times relevant, Plaintiffs' minor children were in the care, custody and control of the Defendants.

144.    Defendants knew or should have known that the impact of their outrageous and abusive conduct upon Plaintiffs' minor children and other children in the K-2 cluster classroom – all of whom are special education students and some with very limited verbal ability, and with mental and physical limitations, would cause severe anxiety and emotional distress for the children.

145.     As a direct and proximate result of the aforesaid outrageous and intentional acts and/or omissions by the Defendants, Plaintiffs' minor children sustained serious, permanent, and ongoing physical and emotional harm.

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendants for an amount determined by the jury at trial, and for costs and such other and further relief as may be warranted under the circumstances.

## COUNT VIII

### Negligent Retention Claim – Defendant CPS and Educator No. 2

146.     Each of the foregoing paragraphs are incorporated herein.

147.     Defendants knew or should have known that prior to February 2023 that Defendant Educator No.1, a special education teacher, had a long standing and continuing history and practice of using physical violence, mental abuse, threatening behavior and offensive language towards minor children she was assigned to teach at Whistler Elementary.

148.     Defendants knew that minor children in Educator No.1 classroom, including Plaintiffs' minor children, presented with various mental and or physical disabilities and learning disorders ranging from cerebral palsy, autism spectrum disorder (ASD), attention-deficit/hyperactivity disorder (ADHD) to sensory processing disorder (SPD), and that a number of the children have impaired cognitive, verbal and nonverbal communication abilities.

149.    Despite Defendants' knowledge that Educator No.1 was failing to treat students with special needs, such as the Plaintiffs' minor children, properly and with knowledge that Educator No. 1 was physically and verbally abusive towards the students in her classroom including Plaintiffs' minor child, Defendants chose to allow Educator No.1 to remain in a classroom teaching special education students at Whistler Elementary.

150.    Despite Defendants' knowledge that Educator No.1 lacked the patience and skill set to carry out the duties and responsibilities needed to teach minor children with special needs, Defendants failed to train Educator No.1 on handling, teaching and working with Plaintiffs' minor child and other children who have special needs and some of who have ASD, ADHD and or SPD.

151.    As a direct and proximate result of the aforesaid acts and/or omissions by the Defendants, Plaintiffs' minor children sustained serious, continuing and ongoing physical and emotional harm.

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendants for an amount determined by the jury at trial, and for costs and such other and further relief as may be warranted under the circumstances.

## COUNT IX

### Battery Claim – Defendant Educator No. 1

152.    Each of the foregoing paragraphs are incorporated herein.

153.    At all relevant times, the Defendant Educator No.1 had a duty to exercise care in their interaction with Plaintiffs' minor children and special education students assigned to the classroom of Educator No.1, at Whistler Elementary, and to refrain from using nonconsensual, harmful, and offensive physical contact with students in the school.

154.    Over an ongoing and continuing period of time up to and including February 2023, while on the premises of Whistler Elementary, Defendant Educator No. 1 engaged in the use of harmful and offensive, physical contact against special education children assigned to her classroom, including directly against the minor children of the following Plaintiffs:  Hagan, Webb/Johnson, Kidd, Hendrix-Turner, Ramirez, Terry, Bright, Thomas, Howell, Haywood, Cox and King.

155.    The conduct was intended to cause, and did cause pain and harm to Plaintiffs' minor child both physically, mentally, and emotionally.

156.    As a direct and proximate result of the ongoing and continuous harmful and offensive physical contact, Plaintiffs' minor children sustained physical and emotional harm.

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendants for an amount determined by the jury at trial, and for costs and such other and further relief as may be warranted under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts.

**PLAINTIFFS, JULIE and
BRANDON HAGAN,
as parents and next best friends
of J.H., a minor**

By: /s/ Melvin L. Brooks
    One of Plaintiffs' Attorneys

Melvin L. Brooks
Victor P. Henderson
**THE COCHRAN FIRM - CHICAGO**
140 South Dearborn Street, Suite 1020
Chicago, Illinois 60603
Tel: (312) 262-2880
mbrooks@cochranfirmchicago.com
vphenderson@henderson-parks.com
Firm No. 62288