**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| Julie Hagan and Brandon Hagan, as parents and next best friends of J.H., a minor; Tennisha Cox, as mother and next best friend of A.G., a minor; Pearl King, as mother and next best friend of M.K., a minor; Mary Terry, as parent and next best friend of Z.G., a minor; Brenda Haywood, as mother and next best friend of M.M., a minor; Pamela Kidd, as mother and next best friend of C.H., a minor; Donnette Bright, as mother and next best friend of D.B., a minor; Parish Bowen and Candace Bowen, as parents and next best friend of J.B., a minor, | |
| Plaintiffs, | No. 1:25-CV-05807 |
| v. | Judge Edmond E. Chang |
| City of Chicago Board of Education (a/k/a Chicago Public Schools District 299), Jane Doe Educator No. 1, and Jane Doe Educator No. 2, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

The Plaintiffs are the parents or guardians of minor children who were taught in a special-education classroom at John Whistler Elementary School. R. 20, Am. Compl. ¶ 11.[1] The parents and guardians sue their children's special-education teacher, school principal, and the City of Chicago Board of Education for alleged

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has federal-question jurisdiction over the federal law claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

abuses and harassment in the classroom. *Id.* ¶ 88. The Plaintiffs bring state law claims, as well as federal claims for violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act (commonly known as the ADA), 42 U.S.C. § 12132. Am. Compl. ¶¶ 89–118, 129–156. The Board of Education moves to dismiss the federal claims. R. 35, Board's Mot.[2] Because plaintiffs plausibly state a cognizable claim under both statutes, the motion is denied.

## I. Background

For the purposes of this motion, the Court accepts as true the factual allegations in plaintiffs' Amended Complaint and draws all reasonable inferences in their favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (per curiam)).

The Plaintiffs are parents and guardians of minor children with various disabilities and learning disorders, such as cerebral palsy, autism spectrum disorder, attention-deficit/hyperactivity disorder, and sensory processing disorder. Am. Compl. ¶ 30. The children are sensitive to loud sounds and require additional time to process information, including requests to perform tasks. *Id.* ¶ 31. And some of the children have impaired verbal and nonverbal communication abilities, meaning they cannot speak. *Id.* As a result, the children were assigned to a special-education classroom for

---

[2]The Board also moves to dismiss plaintiffs' Equal Protection claim. Board's Mot. at 12–18. Plaintiffs voluntarily dismissed the claim, R. 76, Pls.' Voluntary Dismissal Mot., so that aspect of the motion is moot, *see* R. 78, Dismissal Order.

kindergarteners through second graders at John Whistler Elementary in Chicago between 2017 and 2022. *Id.* ¶¶ 1–4, 11–12, 29.

The Plaintiffs allege that their children's special-education teacher (whom the parties call Jane Doe Educator No. 1, but the Court will call the teacher) created a hostile and abusive classroom environment. Am. Compl. ¶ 88. The teacher would "shout at and make demands of special education students that such students, with learning and cognitive disabilities, could not possibly accomplish." *Id.* ¶ 35. She would also use offensive language and curse at the students. *Id.* ¶ 55. When the students did not respond the way that she wanted, the teacher would strike them with wooden rulers or other devices. *Id.* ¶¶ 38, 41–42, 50–54. And the teacher would isolate the students in "time out" in the corner of the classroom for extended periods of time, sometimes depriving the students of lunch and recess breaks. *Id.* ¶¶ 56, 58.

After their placement in the teacher's classroom, the Plaintiffs noticed that the children came home from school with bruises and other marks on their bodies. Am. Compl. ¶¶ 40, 45, 47–49. They also noticed behavioral changes in their children. *Id.* ¶ 73. Some of the children would flinch in reaction to loud noises or when they made a mistake, as if afraid of being hit. *Id.* ¶¶ 74, 78, 82. Others would cry and refuse to go to school. *Id.* ¶¶ 74, 76–77, 79, 82. And some of the children began to throw tantrums and curse. *Id.* ¶¶ 76–77, 86–87.

The Plaintiffs further allege that the school's principal (whom the parties call Jane Doe Educator No. 2, but the Court will call the principal) knew about the teacher's conduct and did nothing. Am. Compl. ¶ 63. For example, they say that the

principal should have known about the teacher's behavior because she passed the students' classroom multiple times a day and could see inside the room through a large window. *Id.* ¶¶ 64–65. They also allege that the principal went into the classroom on a weekly basis and told employees that she "knew everything that occurred in the school." *Id.* ¶¶ 66–67. Finally, the Plaintiffs say that they reported concerns about the teacher and the marks on their children to the principal, and she declined to do anything. *Id.* ¶¶ 69–70.

Based on the allegedly abusive and hostile classroom environment, the Plaintiffs sued the teacher, the principal, and the Board for various state law claims in state court. R. 1-2, Exh. B, Compl. ¶¶ 25–43. The Plaintiffs later amended their complaint to add federal law claims, R. 1-1, Exh. A, Second Am. Compl. ¶¶ 62–129, and the Defendants removed the case to federal court, R. 1, Notice of Removal.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task …." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

The Board articulates several reasons why the federal law claims should be dismissed. *See generally* Board's Mot. The Court addresses each argument in turn and, finding no merit in them, denies the motion to dismiss.

## A. Hostile Learning Environment

The Board first argues that there is no such thing as a claim for "hostile learning environment" under Title II of the ADA and the Rehabilitation Act. Board's Mot. at 3. The Plaintiffs respond that the Seventh Circuit has recognized hostile work environment claims under Title I of the ADA, and there is no reason why hostile environment claims should be recognized at work but not in schools. R. 71, Pls.' Resp. Br. at 4–6.

Given the similarity in the governing statutory text, the Court agrees with the Plaintiffs. For employment-based claims, Title I of the ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in … [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Seventh Circuit has held that "hostile work environment claims are cognizable" under this section of the ADA. *See Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 851–52 (7th Cir. 2019). In other words, a hostile environment constitutes "*discriminat[ion]* against a qualified individual on the basis of disability" in the workplace, and is therefore prohibited under Title I. 42 U.S.C. § 12112(a) (emphasis added); *see Ford*, 942 F.3d at 851–52.

Title II of the ADA, which applies to public entities like public schools, contains similar statutory text as Title I. Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. The two ADA sections thus prohibit the same conduct—discrimination against an individual because of their disability—albeit in different settings

(the workplace versus public-entity programs). Indeed, Congress enacted the two sections to promote the ADA's anti-discrimination purpose in both contexts. *See id.* § 12101(b)(1) (describing the ADA's purpose "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities"); *id.* § 12101(b)(4) (describing how Congress intended "to address the major areas of discrimination faced day-to-day by people with disabilities"). Because the two sections contain similar text and further the same purpose—and are part of the same statutory framework—the scope of conduct they cover should be interpreted to be the same, too. In other words, because a hostile environment constitutes disability discrimination under Title I of the ADA, it also constitutes disability discrimination under Title II.

The same reasoning applies to the Rehabilitation Act. Similar to Title II of the ADA, the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability … shall, solely by reason of [their] disability, be excluded from the participation in, be denied the benefits of, or be subjected to *discrimination* under any program or activity receiving [f]ederal financial assistance." 29 U.S.C. § 794(a) (emphasis added). Both the ADA and Rehabilitation Act thus provide "expansive protections from discrimination for individuals with disabilities." *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018). Because "[t]he relevant provisions and implementing regulations of the Rehabilitation Act and the ADA are materially identical[,] … courts construe and apply them in a consistent manner …." *Id.* (cleaned up).

Thus, the Rehabilitation Act should be interpreted to cover the same discriminatory conduct as Titles I and II of the ADA, including a hostile environment.

The Board notes that the Supreme Court and Seventh Circuit have not specifically recognized claims for hostile learning environments under the ADA and Rehabilitation Act. Board's Mot. at 3–4; R. 87, Board's Reply at 3–5.[4] But the Board provides no reason to distinguish hostile *learning* environments from hostile *work* environments (or any other hostile-environment claim). There is no textual basis to treat the two settings differently. As just described, Title I of the ADA, Title II, and the Rehabilitation Act each contain similar, broad language prohibiting disability discrimination. And each statute promotes the same purpose: the prevention of disability discrimination. So the Board provides the Court with no reason to conclude that claims of disability-based harassment and abuse are cognizable in the workplace, but not in schools. Indeed, "[h]arassment based on disability is no less potent, disruptive, or discriminatory … in a classroom than on an assembly line or in a boardroom." *See Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 313–14 (D. Mass. 1997) (holding that a hostile learning environment claim is cognizable under Title III of the ADA, which prohibits disability discrimination in public accommodations).

---

[4]The Board relies on *A.H. by Holzmueller* to argue that the Seventh Circuit has not recognized hostile learning environment claims. Board's Mot. at 3. But that case did not address this issue. *See A.H. by Holzmueller*, 881 F.3d at 592–93 (describing several different theories of discrimination under the ADA and Rehabilitation Act, including disparate treatment, disparate impact, and failure to accommodate, but not addressing hostile learning environment claims).

What's more, courts have recognized hostile-environment claims in the education context under two other anti-discrimination statutes. Title VI and Title IX of the Civil Rights Act of 1964 require that "[n]o person … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance" on the basis of race, color, or national origin, and sex, respectively. 42 U.S.C. § 2000d; *see also* 20 U.S.C. § 1681(a). Hostile learning environment claims are recognized under both statutes. *See Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). Because those statutes contain "analogous language and policies" to the ADA and Rehabilitation Act, and they allow for hostile learning environment claims, those statutes bolster the conclusion that the hostile-environment claims are cognizable. *Cf. Guckenberger*, 957 F. Supp. at 313–14; *Werth v. Bd. of Dirs. of Pub. Schs. of Milwaukee*, 472 F. Supp. 2d 1113, 1126–28 (E.D. Wis. 2007).

The Board cites a few cases in which courts have declined to recognize a hostile learning environment claim under the Rehabilitation Act and Title II of the ADA . Board's Mot. at 3–4; *see, e.g.*, *Toma v. Univ. of Haw.*, 304 F. Supp. 3d 956, 962–64 (D. Haw. 2018). But those cases are not persuasive. First, they are out-of-circuit district court cases and thus are not binding. Second, the cases contain little reasoning. In each case, the court simply declines to recognize a hostile learning environment claim given the lack of binding precedent. *See, e.g.*, *Stevens v. Brigham Young Univ. – Idaho*, 588 F. Supp. 3d 1117, 1131–32 (D. Idaho 2022) ("Based on the lack of Ninth Circuit or other controlling authority recognizing a claim for § 504 hostile educational

9

environment, the Court declines to recognize such a claim here …."); *Toma*, 304 F. Supp. 3d at 963–64 (same). But as discussed earlier, an examination of the statutory text and purpose of Title I of the ADA, and of the same for analogous statutes forbidding discrimination in education, leads to the conclusion that the hostile learning environment claims are cognizable under the Rehabilitation Act and Title II of the ADA.

### B. Failure to State a Claim

The Board next argues that, even if the hostile-environment claims are cognizable, the Plaintiffs fail to adequately state a claim for two reasons. Board's Mot. at 4–8. First, the Board argues that the Plaintiffs fail to plausibly allege that the students' teacher created a hostile learning environment *because of* the students' disabilities. *Id.* at 4–7. Second, the Board contends that the Plaintiffs fail to plausibly plead that a school official with authority to act on the Board's behalf had actual knowledge of the teacher's alleged conduct. *Id.* at 4–5, 7–8.

### 1. Causation

The Rehabilitation Act prohibits discrimination against an individual "solely by reason of" their disability. 29 U.S.C. § 794(a). Title II of the ADA similarly says that no "individual with a disability shall, by reason of such disability," be subjected to discrimination. 42 U.S.C. § 12132. The Seventh Circuit has thus "consistently held that the statutory language in both the Rehabilitation Act and the ADA requires proof of causation." *A.H. by Holzmueller*, 881 F.3d at 593. So to adequately state a claim under either statute, the Plaintiffs must plausibly allege that, but for the students'

10

disability, their teacher would not have subjected them to a hostile learning environment. *Id.* The Board contends that the Plaintiffs have failed to allege causation because, even if the teacher's actions were abusive and hostile, the Plaintiffs offer no factual allegations to suggest that she was motivated by the students' disabilities. Board's Mot. at 6.

That is wrong: throughout the Amended Complaint, the Plaintiffs allege that the teacher made inappropriate demands of the students given their disabilities. *See, e.g.*, Am. Compl. ¶ 71 (alleging that the teacher "demanded that a non-verbal child respond to questions when the student could not do so"); *see also* Am. Compl. ¶¶ 31, 33, 35, 51, 53 (similar allegations). And when the students could not perform to the teacher's standards, the Plaintiffs allege, the teacher responded with verbal and physical abuse. *See, e.g.*, Am. Compl. ¶ 38 (alleging that the teacher "often struck students with wooden rulers or other devices, when the special education children had difficulty completing assignments or tasks"); Am. Compl. ¶ 51 (alleging that the teacher "yelled, screamed, and threatened" one student "in response to him coloring with a yellow crayon as opposed to a red crayon, and repeatedly struck him with a wooden ruler as a means of gaining compliance"); *see also* Am. Compl. ¶¶ 37, 53–54, 58 (similar allegations). In short, the Plaintiffs allege that the students did not behave the way the teacher desired *because of* their disabilities, causing her to harass and abuse them—again, *because of* their disabilities. *See Zimny v. Geneva Comm. Unit Sch. Dist. 304*, 718 F. Supp. 3d 766, 783–84 (N.D. Ill. 2024) (holding that plaintiff adequately pleaded causation because he alleged that he was harassed for the way

he walked, and he walked differently because he was disabled). Viewing the Amended Complaint as a whole, these allegations raise a reasonable inference that the teacher harassed and abused the students because of their disabilities. *See id.*

In arguing otherwise, the Board demands too much at the pleading stage. For example, the Board notes that there are no allegations that the teacher treated similarly situated non-disabled students differently. Board's Mot. at 6. But identifying comparators like that are not necessary at the pleading stage. *See Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) (holding that because plaintiffs "need not allege each evidentiary element of a legal theory to survive a motion to dismiss," the failure to plead comparators "is not fatal"). At most, comparators might be relevant at the summary judgment stage, if the Plaintiffs try to offer a prima facie case of discrimination to survive a summary judgment motion. Comparators are generally not needed at the pleading stage.

The Board also relies on *Funes ex rel. C.F. v. Gardner Consol. Sch. Dist. 72C*, 2022 WL 1556104 (N.D. Ill. May 17, 2022), but that case is distinguishable. Board's Mot. at 6. There, the district court dismissed the ADA and Rehabilitation Act claims because there was no evidence that the plaintiff's harassers even *knew* of the plaintiff's disability, let alone harassed the plaintiff because of disability. *Funes*, at *6. In contrast, here of course the teacher clearly knew about her students' disabilities— she taught in a special-education classroom. Am. Compl. ¶ 15. And the Plaintiffs allege that she abused the students because they behaved in certain ways due to their

disabilities. *See id.* ¶¶ 30, 37–38, 51, 53–54, 58. The Plaintiffs thus plausibly allege but-for causation.

## 2. Deliberate Indifference

To recover compensatory damages under the ADA or Rehabilitation Act, a plaintiff must allege intentional discrimination. *Lacy v. Cook County*, 897 F.3d 847, 862–63 (7th Cir. 2018). "A plaintiff can establish intentional discrimination … by showing deliberate indifference," which "requires both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 595 (7th Cir. 2023) (cleaned up). So to adequately state a claim for compensatory damages against the Board, the Plaintiffs must allege that the Board was deliberately indifferent to the teacher's harassment and abuse.

The Board further contends that, to plead deliberate indifference, the Plaintiffs must allege actual knowledge of the teacher's conduct by a school official with authority to take corrective measures on the Board's behalf. Board's Mot. at 7–8. In response, the Plaintiffs note that this is not a settled proposition of law. Pls.' Resp. Br. at 10–11. Title IX requires actual knowledge of discriminatory conduct by a school official to prove a school board's deliberate indifference. *Doe v. Bd. of Educ. of Chicago*, 611 F. Supp. 3d 516, 528 (N.D. Ill. 2020) ("[T]here is no vicarious liability under Title IX, so the Plaintiffs must adequately allege that a school official with authority to take corrective measures on the Board's behalf had actual notice of and was deliberately indifferent to [the] alleged sexual abuse."). But the Supreme Court and

13

Seventh Circuit have not addressed whether the Rehabilitation Act and Title II of the ADA also contain an actual-knowledge requirement, and circuits are split on the issue. *Id.* at 531. Still, as described previously, Title IX, the ADA, and Rehabilitation Act have virtually identical language, and courts have consistently relied on case law developed under each statute to interpret the other two. *See id.*; *see also Foss v. City of Chicago*, 817 F.2d 34, 36 n.1 (7th Cir. 1987) ("Because the program-specific language of Title IX is identical to that of § 504 of the Rehabilitation Act, the Supreme Court has consistently relied on case law developed under Title IX in interpreting § 504." (cleaned up)). And it appears probable that, like Title IX, neither the ADA nor the Rehabilitation Act permit vicarious liability. *See Bd. of Educ. of Chicago*, 611 F. Supp. 3d at 531. It is thus likely that the ADA and Rehabilitation Act require actual knowledge by a school official to prove the Board's deliberate indifference. *See id.*

The Court need not opine on this issue further because even if there is an actual-knowledge requirement, the Plaintiffs adequately allege actual knowledge here. Specifically, they point to the school principal, Am. Compl. ¶¶ 64–70, who is a school official with authority to take corrective action on behalf of the Board, *see C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 545 (7th Cir. 2022). The only question is whether plaintiffs raise a reasonable inference that the principal had "actual knowledge" of the teacher's behavior. Board's Mot. at 7–8.

"School administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Galster*, 768 F.3d at 618. Some of the Plaintiffs' allegations raise only an inference that the principal *should have known*

14

about the teacher's conduct, not that she *actually knew* about it. *See* Am. Compl. ¶¶ 64–67 (alleging that the principal routinely walked past or into the students' classroom, and therefore "knew or must have known about the conduct occurring therein"). Those allegations, taken alone, are insufficient. *See Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008) ("The Supreme Court has flatly rejected applying a 'knew or should have known' standard." (cleaned up)). But the Plaintiffs further allege that they "reported concerns about" the teacher to the principal. Am. Compl. ¶ 69. The Plaintiffs then met with the principal, who declined to address their concerns and "made excuses for injuries" to the students. *Id.* ¶¶ 69–70. These are plausible allegations that the principal was notified of the teacher's conduct and attempted to cover it up, which raises an inference of actual knowledge of the alleged hostile learning environment. *See Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 954 (S.D. Ind. 2007). Viewing the Amended Complaint as a whole, the Plaintiffs thus adequately allege deliberate indifference.

### C. Duplicative Claims

Even if the Plaintiffs have adequately stated claims under the ADA and Rehabilitation Act, the Board asks the Court to dismiss one or the other of those claims because they are duplicative and may result in juror confusion or double recovery for the same injury. Board's Mot. at 8–10. But the Plaintiffs can plead claims in the alternative if each claim is plausible. *See* Fed. R. Civ. P. 8(d)(3); *In re MultiPlan Health Ins. Provider Litig.*, 789 F. Supp. 3d 614, 645 (N.D. Ill. 2025). And claims under the ADA and Rehabilitation Act are not actually 100% identical. *See Jaros v. Ill. Dep't of*

*Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (describing how, compared to the ADA, "the Rehabilitation Act includes as an additional element the receipt of federal funds"). What's more, even if both claims reach a jury, the Court will issue jury instructions and a verdict form to prevent juror confusion or double recovery. *See City of Chicago v. Smollett*, 421 F. Supp. 3d 565, 576 (N.D. Ill. 2019). Because the Court can deal with the Board's concerns at a later stage, if necessary, it is premature to dismiss either claim. *See id.*; *see also Cesca v. W. Ill. Univ. Bd. of Trs.*, 716 F. Supp. 3d 696, 713 (C.D. Ill. 2024).

### D. Damages

Finally, the Board argues for dismissal because (1) the Plaintiffs have not adequately alleged deliberate indifference, which is required to receive compensatory damages, and (2) the Plaintiffs cannot receive damages for emotional distress under the ADA and Rehabilitation Act. Board's Mot. at 10–12. The Court has already decided that Plaintiffs adequately allege deliberate indifference. *See supra* Section III.B.2. And the Plaintiffs concede that they are not seeking damages for emotional distress under their federal law claims. Pls.' Resp. Br. at 13. These grounds are not bases for dismissal of the claims outright.

## IV. Conclusion

The Board's motion to dismiss, R. 35, is denied.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang

United States District Judge

DATE: March 30, 2026